DENNIS D. SADORRA IN PRO PER
43-810 SKYWARD WAY
LAQUINTA, CA 92253
(760) 880-8416
DENNISSADORRA@GMAIL.COM
Self-Represented

```
                    FILED
          CLERK, U.S. DISTRICT COURT

            06/07/2024

        CENTRAL DISTRICT OF CALIFORNIA
        BY: _____ AP _____ DEPUTY
```

**FEE PAID**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. DENNIS SADORRA,<br><br>Plaintiff,<br><br>vs.<br><br>JAY BROWN, AND MARGARET BROWN,<br><br>Defendants. | Case No. 5:24-cv-01212-KK(SHKx)<br><br><br>**NOTICE OF REMOVAL OF ACTION<br>UNDER 28 USC 1441 (c)<br>FEDERAL QUESTION** |

TO THE CLERK OF THE COURT,

PLEASE TAKE NOTICE that Plaintiff, Dr. Dennis Sadorra hereby removes

in this Court the state court action described below:

1.  On March 20, 2024, Dr. Sadorra filed a complaint in the Superior Court of

California, County of Riverside (Sadorra v. Jay Brown and Margaret Brown,

case number CVPS 2401619) attached hereto as **Exhibit A.**

2.  A copy of Summons is attached hereto as **Exhibit B** and incorporated herein by reference.

3.  This action is a civil action for which this Court has original jurisdiction under 28 USC 1331, because "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, treaties of the United States."

4.  Excluding attorney fees, Amount in controversy is $120,000 in damages to Plaintiff's property, which exceeds the $75,000 threshold for federal jurisdiction.

5.  Plaintiff in the complaint asserts discrimination in Fair Housing and Constitutional Rights violations, and additionally, malicious property damage, CC&R violations, including city, and state code property violations and seeks compensatory relief for damages.

6.  This filing is timely and within the timeframe in which to file a removal of a case on the basis of Federal Question.

**Federal Question-Violation of Fair Housing Act (42 U.S.C § 3631)**

7.  Within the complaint, discrimination is documented. Defendant made discriminatory remarks towards Plaintiff which adds support to Federal

**NOTICE OF REMOVAL**                    2

questions within the case, a clear violation of 42 U.S.C § 3631 (Fair Housing Act) and an additional cause of action.

8. Issue of Federal question arose when during the incident Defendant Brown's demeanor changed, he yelled that Plaintiff's wall would "BLOCK HIS FUCKING VIEW. "Filled with rage, he yelled that, "YOU PEOPLE CAN'T MOVE INTO THIS NEIGHBORHOOD AND DO WHAT YOU WANT." Mrs. Brown too yelled angrily that "A WALL WOULD BRING OUR PROPERTY'S VALUE DOWN."

9. Plaintiff is of Asian/ Hispanic descent, and this statement, as asserted, immediately translated to racial remarks.

10. Racially motivated Targeting behavior is further observed when Defendant, who is an HOA board member, used his authority to halt Plaintiff's Solar project and several landscape architectural projects that were submitted to the HOA Board. Defendant Brown in his email admitted he was the person who complained to the HOA that stopped construction during Plaintiff's installation of solar panels harassing Plaintiff.

11. According to the governing statute:

Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with…any person because he is or has been, or in order to intimidate such person or any other person or any class of persons

**NOTICE OF REMOVAL**                    3

from…Participating…In any of the activities, services, organizations or facilities…shall be fined under title 18…42 U.S.C § 3631.

**Malicious Property Damage, Violation of CC&R**

12. In February 2020 Plaintiff notified the HOA that Defendant built over onto his property. Defendant was warned by HOA for encroaching and building on Plaintiff's property. Defendants' contractors were forced to come back and correct the problem, which in consequence increased the elevation of Defendant's property soil to over a foot and a half above Plaintiff's. This new elevation created an uneven slope between the properties of Plaintiff and Defendant. It is illegal to alter drainage patterns on a property in the neighborhood residential area HOA rule Section 6.22.(No Interference with Established Drainage Patterns) and Section 6.8 (Impairment of Lots and Easements). Defendants are further in violation of enactments, (city and state) that property drainage must flow towards the street to prevent water damage to proximate properties.

13. Plaintiff is unable to build or make changes to the entire side of his property which is about 2000 to 3000 square feet of land. Plaintiff's property is still subject to flooding, and current Damages is estimated at over $120,000.00.

14. **Crucially**, Removal is necessary because this action involves Federal Question Jurisdiction on the violation of Fair Housing 42 USC 3604(f)(2), Property Rights (42 USC 1982), and Plaintiff's 5th, and 14th Amendment Rights.

Respectfully submitted

**Dated;** June 7, 2024,

Dr. Dennis Sadorra

CERTIFICATE OF SERVICE

I hereby verify that on June 7, 2024, the Foregoing NOTICE OF REMOVAL, and all its exhibits thereto, were filed via this courts electronic filing system and that copies of same were served upon all parties.

**EXHIBITS ATTACHED HERETO**

**Exhibit A - State Complaint**

**Exhibit B - Summons**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*



F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 20 2024

J. Reyes

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Jay Brown and Margaret Brown

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DR. DENNIS SADORRA

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

  You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

  There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

  Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

  Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* PALM SPRINGS COURTHOUSE

3255 E. TAHQUITZ, PALM SPRINGS, CA 92262

CASE NUMBER:
*(Número del Caso):* CVPS2401619

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

| DATE: | MAR 20 2024 | Clerk, by | | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | J. Reyes | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1.  [x] as an individual defendant.
2.  [ ] as the person sued under the fictitious name of *(specify):*

3.  [ ] on behalf of *(specify):*

    under: [ ] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
           [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
           [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
           [ ] other *(specify):*
4.  [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
SUMMONS
Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov



F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAR 20 2024

J. Reyes

DH

MAR 2 1 2024

1  Dennis Sadorra IN PROPER
2  43810 Skyward Way,
   LaQuinta, California 92253
3  Telephone: (760) 880-8416
   Email: dennissadorra@gmail.com

4          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
5          **COUNTY OF RIVERSIDE, PALM SPRINGS COURTHOUSE**

6  **DR. DENNIS SADORRA**              Case No.: **CVPS 2401619**

7          **Plaintiff,**

8             vs.                       **COMPLAINT FOR:**

9  **JAY BROWN, MARGARET BROWN**

10        **Defendants,**

11                                      **(1) MALICIOUS PROPERTY DAMAGE**

12                                      **(2) CCR, CITY, STATE CODE**
                                        **PROPERTY VIOLATIONS**
13                                      **(3) COMPENSATORY RELIEF FOR**
14                                      **DAMAGES**

15

16                                      [Unlimited Civil]

17                                      **[DEMAND FOR JURY TRIAL]**

18

19  Plaintiff, DR. DENNIS SADORRA alleges against Defendants, JAY AND MARGARET
20  BROWN, a married couple the owners of real property located at 43840 Orion Court, La Quinta,
    California, 92253 (collectively "Defendants") as follows:
21

22                       **FIRST CAUSE OF ACTION**
23                      **MALICIOUS PROPERTY DAMAGE**
24                        (As Against All Defendants)

25

26

                                    COMPLAINT
27                                       1

1.  Dr. Sadorra, a disabled Iraq war veteran and retired teacher who owns a home in the Starlight Dunes HOA community in LaQuinta CA. Mr. Jay and Margaret Brown own a home next door to the south of Dr. Sadorra's property.

2.  Mr. Sadorra hired a landscape contractor in October of 2022 to clear shrubs from his property. After the shrubs were cleared the contractor pointed out to Sadorra that a property slope was revealed that changed the land elevation between Sadorra and Browns properties. The "slope" in question was not original to the Browns original purchase of the land and the slope was causing damage to the Sadorra property. The slope in question was created when the Browns had done a massive front yard landscape project.

3.  In February of 2020 Mr. Sadorra notified the HOA that Mr. Brown built over onto his property **(Exhibit 1).** After Brown was warned by the HOA of the complaint of encroaching and building on Mr. Sadorra' property, Browns contractors were forced to come back and correct the problem by clearing Browns landscape material off of the Sadorra property back onto Browns side of the property line. Since the contractors scraped the material back onto the Brown property then built the new landscaping project on top of it, a change in the property's drainage pattern occurred and elevated Mr. Browns property soil to over a foot and a half above Mr. Sadorra's property. Browns new elevation created an uneven slope between the properties, as seen in **(EXHIBIT 2)**, and was what led to the landscaper contractor's discovery of the damage occurring.

4.  The landscape contractor went on to point out the slope had caused water damage to Sadorra's home when storm water runoff flowed back from the Browns property and pooled/collected against the south wall of Sadorra's home. Obvious damage is visible at the base of the stucco wall on the Sadorra home as seen in **(EXHIBIT 3).**

5.  Contractors warned the stormwater flowing backwards onto the Sadorra property and pooling/collecting next to his home needed to be corrected or future damage would occur to the Sadorra property.

6.  New Year's Eve and New Year's Day 2023, the area had rainstorms for two days and the flooding was significant. Flooding occurred again on August 20, 2023, and during the major two-day storm, just as the contractors had predicted, storm water draining from the Brown

property flowed onto the Sadorra property pooled and flooded next to the Sadorra home as shown in **(EXHIBIT 4).**

7. An inspection of the interior, on the opposite side of the flooded area in the master bedroom closet, more damage was discovered. While water pooled outside next to the Sadorra home, the water seeps into the residence causing waterlogged drywall and ruined laminate floors in the master bedroom closet as shown in **(EXHIBIT 5).**

8. Additional issues with water pooling is the high risk of changes occurring to the soil under the home's cement foundation as it becomes too soft forcing a loss of compaction. This loss of compaction often leads to the sand and soil being undermined leading to stress cracks in the cement foundation, stucco walls and drywall walls and ceiling of the home. Stress cracks are currently visible and present in the Sadorra home appearing on the corners of the sliding patio doors, window, and interior ceiling cracks, all located at the corner of the house where the flooding and water damage occurred as seen in **(EXHIBIT 6).**

9. A homeowner altering drainage patterns on a property in the neighborhood residential area is illegal according to the HOA (Home-Owners-Association) rule **Section 6.22.** (No Interference with Established Drainage Patterns) and **Section 6.8** (Impairment of Lots and Easements). Brown is also violating the general rule of all city and state ordinances that property drainage must flow towards the street to prevent water damage to any neighboring properties.

10. The homes in the cul-de-sac next to the Sadorra and Brown homes follow CCR, City and State code and have "level" elevations between each property sloping together downward into the street drains as seen in **(EXHIBIT 7).**

11. The damages could have been avoided when Mr. Sadorra requested of Mr. Brown for a block wall to separate their properties in 2017. When Sadorra made his original request to Mr. Brown, Brown refused and argued to the HOA board that a block wall would block his personal view to the street from the front of his home. Brown also argued he would have to see the block wall from his front door. Browns argument was clearly stated in the following letter he publicly provided to the HOA board as seen in **(EXHIBIT 8).** Mr. Sadorra's attempts to be rational with Mr. Brown were all thwarted by Mr. Browns belief that he has a right to a view while the law clearly states differently. This rigid stance has produced a failure on Mr. Browns part to be

reasonable in any of the options for landscape modifications, the need for a block wall to prevent damage to the Sadorra home or establish a good rapport with his neighbor Mr. Sadorra.

12. Mr. Sadorra explained that there are no rules in the CCR's or City State or Federal law that protects Mr. Browns personal view. The California Supreme Court spoke on this subject in the late 19th century case of *Kennedy v. Burnap* and established the doctrine in California that one's ownership of land does not imply a right to force owners of neighboring land to refrain from obstructing the view from the land or the light and air reaching the land. This law has not changed since that case was decided in 1898. Mr. Sadorra is not asking for any special treatment or a special wall because over 90 percent of the homes in the community have a wall separating each neighboring home.  The neighborhood also consists of many homes that have a similar block wall if not exact as the one Mr. Sadorra is requesting as seen in **(EXHIBIT 9).**

13. The contractors have further explained there are two ways to correct this problem, the first being, Mr. Browns landscaping needs to be removed and the soil needs to be graded to the same original elevation on both sides of the property and follow the regulations of CCR, City and State code and slope away to the street as the other homes in our neighborhood do.

14. The second solution to correct the drainage problem would be a retaining wall which would keep drainage of each property on its own side eliminating water from sloping and pooling onto another property owner's land, as the neighbors to the Sadorra/Brown properties have as seen in **(EXHIBIT 10).**

15. The land where the damage is occurring has been rendered useless since it is subject to flooding and damage. Sadorra will not be able to build or make changes to the entire side of his property which has an estimated size of 2000 to 3000 square feet of land until the drainage issues are corrected and no longer subject to flooding. Browns drainage problem has created a large unusable space on Sadorra's land, as seen in **(EXHIBIT 11).**

16. City Code enforcement explained because the property is within an HOA and the damage was caused due to a neighboring homeowner's alteration of the elevation of the property, it would be a violation of city ordinance, but it would be a civil matter that would need to be handled through a court case. Sadorra was directed to the LaQuinta City website where it explains the city will not get involved in neighbor disputes that are civil case matters for the courts to decide.

17. A temporary ditch has been dug to relieve some future flooding issues but does not resolve the entirety of the problem because the backflow issues still exist, and this measure does not resolve the water pooling/damage issue or the existing cracks from previous flooding.

18. The Browns' refusal to communicate over the past several months regarding the problem of their landscaping, even refusing to provide their insurance company information, makes the Browns liable for damages. Though much of the communication of the problems Mr. Browns illegal drainage was done through attorney contact, the Browns are still continuing to ignore or provide any response. The Browns actions indicate a maliciousness to harm the Sadorra property.

19. A court of law would easily find that Mr. Brown is liable for damages of his lot creating water to drain away from the streets and onto Mr. Sadorra's property, a direct violation of the Starlight Dunes HOA CCR's (Section 6.8 Impairment of Lots and Easements). Browns illegal modification of the drainage pattern has caused water to pool next to Sadorra's home causing rot, rust, and damage, this is another violation of CCR's (Section 6.14 Undermining the structural integrity) of Mr. Sadorra's home. The illegal drainage issues also violate both CCR's Section 6.22 Drainage, as well as the established city ordinance code stating all homes must have proper drainage to the streets. Mr. Brown is completely ignoring the fact that if he does not correct and level his property or install a block retaining wall (party wall) the illegal drainage will continue to damage Mr. Sadorra's property. Mr. Sadorra has approached multiple experts in Civil Engineering, Surveying, and professional Building Contractors who have confirmed the problems with the illegal drainage. These professionals in the industry have provided Mr. Sadorra with professional stamped reports and damage estimates regarding the ongoing problems and damage to the Sadorra home.

## SECOND CAUSE OF ACTION
### CCR, CITY, STATE CODE PROPERTY VIOLATIONS

20. Mr. Brown clearly altered the drainage pattern to his property and those changes are now causing damage to the Sadorra property, which is illegal according to the HOA rule **Section 6.22.** (No Interference with Established Drainage Patterns) and **Section 6.8** (Impairment of Lots

and Easements). Brown is also violating the general rule of all city ordinances that property drainage must flow towards the street to prevent water damage.

21. State of California Civil Code 1101.2, which the City of LaQuinta falls under, says no property owner can change the slope and drainage pattern of their property and create a nuisance to neighboring properties. The LaQuinta City code (13.24.120 K – Drainage) reflects that drainage patterns are not to be changed when it comes to drainage slopes. Further pooling of the water next to the Sadorra home's foundation is changing the soil compaction rate and hydraulic calculations that are normal to home building standards. This change in soil compaction rate is opening the door to further damage to the Sadorra home's foundation and will lead to further cracking in both the home's cement foundation, walls and ceiling near the flooding area.

22. Mr. Brown is disregarding the rules and laws as his changing of the drainage pathway is now causing damage to the Sadorra property. Homes that have elevated yards above their neighbors have a retaining wall, common in the HOA neighborhood. By not building a retaining wall to keep correct drainage and water from pooling or back flowing and damaging a neighboring property as such in this case.

## THIRD CAUSE OF ACTION
### COMPENSATORY RELIEF FOR DAMAGES

23. Equitable Relief may be found in simply the Browns erecting a retainer wall to correct the drainage problems and follow the legal CCR, City and State codes. This idea was provided to the Browns, but they ignored the offer.

24. Four separate professional experts in Civil Engineering, Surveying and construction have provided detailed reports outlining the drainage problems caused by Mr. Brown and the estimated damages to the Sadorra property. The estimates do not include future damage that will occur on the Sadorra property which are expected during future rainstorms and flooding resulting from the Browns drainage problems.

## PRAYER FOR RELIEF

**WHEREFORE,** Applicant's request that the Court in its Motion and enter:

COMPLAINT

6

1

2

3

4

5

6

7

8

a) The Browns correct the drainage problems by building a retainer wall or remove the elevated landscaping to restore the natural and original drainage pattern.

b) The Browns pay for property damages of the Sadorra home which estimates are over $120,000.00 in damages.

**Dated;** March 18, 2024,

Respectfully submitted by: Dr. Dennis Sadorra

Dennis Sadorra

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT

7

**EXHIBIT 1 -** Sadorra notified the HOA that Mr. Brown built over onto his property.



**EXHIBIT 2 –** Browns new elevation created an uneven slope between the properties.





**EXHIBIT 3 –** Obvious damage is visible at the base of the stucco wall on the Sadorra home.





**EXHIBIT 4 –** storm water draining from the Brown property flows onto Sadorra property pooling collecting and flooding next to Sadorra home.




**EXHIBIT 5 –** water pooling outside seeps into Sadorra residence causing damage in master bedroom closet.



COMPLAINT
10

**EXHIBIT 6 -** Stress cracks appearing on the corners of the sliding patio doors, window, and interior ceiling cracks, all located at corner of house where flooding and water damage occurs.



Photo Taken December 2022

Photo Taken September 2023. In several months, the crack has enlarged.





COMPLAINT
12

**EXHIBIT 7 -** homes in the cul-de-sac next to the Sadorra and Brown homes follow CCR, City and State code and have "level" elevations between each property sloping together downward into the street drains.



**EXHIBIT 8 -** Browns argument was clearly stated in the following letter he publicly provided to the HOA board.

**Jay & Margaret Brown**
**43-840 Orion Ct.**
**La Quinta, California 92253**

E-mail: brown█████████.com
December 6, 2018

To: Starlight Dunes Board of Directors

Sent via E-mail

Dear Board Members:

Thank you, for giving us the opportunity to express our views on the latest version of Sadorra's plans for his side yard. Our views on his initial plan to build a wall are well known and we stand by them. His new project is of vital importance to us and those around us. It will greatly affect the nature and quality of our life and the enjoyment of our beloved Starlight Dunes residence.

Mr. Sadorra seems to have a profound psychological need to have site and entry barriers along his proposed side yard enclosure. If, that be true, then he will never be satisfied with a four-foot hedge. The only real difference between a wall and a hedge is the material that they are made from; they both block views and restrict access. To have a hedge to enclose an area of desert landscaping is of its self a conflict of logic. There is nothing like this in Starlight Dunes or anywhere in the surrounding area. If Sadorra truly wants a quality desert landscaped yard he need only look across the cul-de-sac at the ████████ residence (████████ Way) and others in our area for some ideas. Peg and I would gladly conform our yard to a similar design for continuity and aesthetics as we did with the ████████ residence on our south side.

This hedge, interposed with trees, has the same effect to our property as a wall would have. The view of the front of our house from the street would be affected in the same manner. The crime element is still present which will cause us to install additional security measures.

A hedge will only stay at a fixed height if it is maintained at that level. Otherwise a 4-foot hedge rapidly becomes a 5-6-7 foot one and still needs to be trimmed on all sides and watered. We can and would keep the hedge at the 4-foot level along our property line but that in of its self puts an additional burden and expense on us for only his benefit. He has no creditability with us and we do not believe that he will do any of the maintenance that will be required. In a short time his yard and hedge will look the same as his yard has for the past 7 months. Since Sadorra has moved into this house he has allowed his yards to deteriorate; his side yard was strewn with dead trees since at least May 25, 2018 and it was just "cleaned" out today (Dec.5, 2018) but is still in disarray and needs additional work done. Will he do any of that soon or wait another 7 months? We shall see.

His plan lacks any specifics as to the type of hedge or trees that he is proposing. What does the word "garage" in the desert landscape part of the plan mean? What does "trees (not to exceed height of

COMPLAINT
14

neighbor's trees)" actually mean and which neighbor/s is he referring to? The species of hedge and trees needs to be addressed, it makes a big difference if the hedges are to be Natal Plum; Pyracantha; Oleander, or… and the trees are eucalyptus, citrus, mesquite, olive, or…each carries with it its own unique maintenance requirements that greatly affects us as we have to live on the back side of them. Overall, the plan he is submitting (with additional plant and ground cover specifics) is acceptable, <u>without the hedge</u>; which is unnecessary and inconsistent with all the other homes within Starlight Dunes.

If, however, the Board of Directors (BOD) should decide that the hedge must be allowed then we suggest that the following conditions be made a part of the approval and as legally binding as possible (I am sure that your Attorney will have better language):

   The hedge shall not be allowed to rise above 3 feet above current grade level (4 feet is too easy to hide behind) at the area where it is planted.

   All trimming, pruning, and maintaining the height requirement shall be the responsibility of Dennis Sadorra or subsequent owner of the residence. If Sadorra, or other owner, does not maintain the hedge in an acceptable state of trim on all sides and top, as determined by the BOD, then that body has the right to contract a landscaping firm to correct the deficiency. The cost of which will be billed to the property owner. If the bill is not paid then a reimbursement or special assessment will be placed on the property by the BOD.

   No other permanent or temporary (longer that 30 days) structure of any kind shall be built within the inner perimeter of the hedge line. This includes but is not limited too; any other driveways; concrete or paving stone or brick slabs; no vehicles of any kind shall be parked in the area; no patio covers or tent type shade structures.

   Only the desert or zeroscape type landscaping will be permitted in the area enclosed by the hedge. The BOD will have the power to remove at the owner's expense any non-compliant structure.

<u>There is historical and current evidence to warrant these restrictions.</u>

Exterior landscaping is a means by which the owners in a community identify themselves as ones that have pride in their property and neighborhood. The Board of Directors has the duty to protect all the owners from themselves and aberrant members so that all property values are maintained and enhanced; otherwise we are just another group of track homes.

Respectfully Submitted Jay & Margaret Brown

*Jay Brown*
*Margaret Brown*



COMPLAINT
15

1

**EXHIBIT 9 –** neighborhood consists of many homes that have a block wall if not exact as the one
Mr. Sadorra is requesting.

2

**HOA Block Walls in Starlight Dunes Community**

3

All 150 homes within the HOA have block walls separating each property boundary

⊗ - Home with a block wall that is 10 feet or less from the curb

4

✖ - Homes with block wall in front of the home or block wall extends past their garage door

✖ - Homes that face the neighboring house or neighbors block wall

5

6



7

8

9

10

11

12

13

14

15

16

17



18

19

20

21

22

23

24

25

26

COMPLAINT

16

1    **EXHIBIT 10 -** neighbors to the Sadorra/Brown properties have common retaining walls.



8    **EXHIBIT 11 –** Browns drainage problem has created a large unusable space on Sadorra's land.



**Two pages from one of two civil engineers' reports**

### 5. FINDINGS:

The landscaping alterations at 43-840 Orion Court, La Quinta, have precipitated several significant issues to 43-810 Skyward Way. LaQuinta, as evidenced by the findings detailed below:

**5.1 Water Collecting/Pooling:**

Mr. Browns changes to his land have altered and changed the way water flows when it rains or storms, now consistent water collects at the southeast corner of the Sadorra property. This sitting water problem has eroded some of the Sadorra property and has caused damage to the building and its foundation and surrounding soil.



Water Collecting/pooling during storms.



Zero inches          18 inches

Difference in elevation

